ROSELINE D. FERAL
Attorney at Law
State Bar No.: 128788
444 West "C" Street, Suite 310
San Diego, CA 92101
Telephone: (619) 232-1010
Facsimile: (619) 231-2505

Attorney for Defendant
VICTOR SOTO-AGUILAR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
(HONORABLE JOHN A. HOUSTON)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **Case No.: 21-CR-1665-01-JAH** |
| Plaintiff, ) | |
| v. ) | **DEFENDANT'S SENTENCING MEMORANDUM AND DOCUMENTS IN SUPPORT** |
| VICTOR SOTO-AGUILAR (1), ) | |
| Defendant. ) | **DATE: December 13, 2021** |
| ) | **TIME: 10:00 a.m.** |

TO: ROBERT S. BREWER, JR., UNITED STATES ATTORNEY;
JAMES N. ROTSTEIN, ASSISTANT UNITED STATES ATTORNEY; AND
JILL JOHNSON-POGUE, UNITED STATES PROBATION OFFICER:

Defendant VICTOR SOTO-AGUILAR (hereafter referred to as "Mr. Soto"), by and through his counsel, Roseline D. Feral, and pursuant to Local Criminal Rule no. 32.1(a) (7), hereby submits Defendant's Sentencing Memorandum.

///

///

DEFENDANT'S SENTENCING MEMORANDUM 1

## I.
## INTRODUCTION AND BACKGROUND

On June 2, 2021, a 27-count Indictment was filed in the Southern District of California charging Victor Alfonso SOTO-Aguilar, in Count One with Attempted Bringing in Illegal Aliens and Aiding and Abetting Resulting in Death, a violation of 8 U.S.C. § 1324(a)(1)(A)(i), (v)(II), (a)(1)(B)(iv), in Counts Two through Fourteen, with Attempted Bringing in Illegal Aliens and Aiding and Abetting, a violation of 8 U.S.C. § 1324(a)(1)(A)(i), (v)(II), in Counts Fifteen through Twenty-Seven, with Attempted Bringing in Illegal Aliens for Financial Gain and Aiding and Abetting, a violation of 8 U.S.C. § 1324(a)(2)(b)(II) and 18 U.S.C. § 2.

## II.
## CURRENT CUSTODY STATUS

Mr. Soto-Aguilar was taken into federal custody on May 20, 2021, upon his arrest on the instant matter. He was arrested without incident and has 208 days of custody credit.

## III.
## SENTENCING RECOMMENDATION

The plea agreement in this case contains the following application of the Guidelines:

| | |
|---|---|
| Base Offense Level [USSG § 2L2.2 (a)] | 12 |
| Number of Aliens [USSG § 2L1.1(b)(2)(A)] | +3 |
| Substantial Risk [USSG § 2L1.1(b)(6)] | 18 |
| Resulting in Death [[USSG § 2L1.1(b)(7)(D)] | +10 |
| Acceptance of Responsibility [USSG § 3E1.1] | -3 |

Mr. Soto joins in the government's recommendation of sixty months which is the statutory minimum mandatory sentence.

DEFENDANT'S SENTENCING MEMORANDUM 2

# IV.
# SENTENCING MEMORANDUM
# [ANALYSIS OF 18 U.S.C. 3553(a) FACTORS]

## A. PERSONAL HISTORY

Mr. Soto-Aguilar, 36, has been a resident of San Felipe, B.C., Mexico, where most of his family resides. He is a fisherman by trade. Mr. Soto grew up in an abusive and neglectful family. His stepfather physically abused him, even when young Mr. Soto was not at fault. Mr. Soto's mother was neglectful and did not protect her children from the stepfather's abuse.

Mr. Soto, after age 12, was left to fend for himself. He grew up with no parental supervision. Mr. Soto developed a methamphetamine habit as he was living in the streets most of his teenage years.

Despite his past, Mr. Soto has taken on the responsibility of providing for his two children. As independent fishermen are having a very difficult time finding fish due to the commercial fishermen's overfishing, Mr. Soto thought he might be able to do better in the United States. His inquiries eventually led him to a contact who told him that if he piloted the panga, Mr. Soto would not have to pay for his transport.

## B. OFFENSE CONDUCT

Mr. Soto-Aguilar would like to supplement the Statement of Facts as recited both in the Presentence Investigation Report (ECF No. 77) at pages 4-8 and the Government's Sentencing Memorandum (ECF No. 80).

///
///
///
///

DEFENDANT'S SENTENCING MEMORANDUM 3

Per Defense Revised Investigation Report *(See Exhibit 1: ABE Investigations Revised attached to this pleading and incorporated by reference)*, and defense counsel's notes of interviews of all thirteen material witnesses, the following facts were developed:

1. Each material witness, except for one developmentally disabled witness who was not able to recite any facts and the interview was ended, agreed that Mr. Soto and Mr. Romero did not have their life jackets while all fourteen were given theirs.

2. When the material witnesses arrived at the pick-up area at an unknown location in Ensenada, Baja California, Mr. Aguilar joined them on land before the group boarded the panga.

3. From the very beginning, Mr. Soto complained that the panga was over capacity and the engine was malfunctioning. Mr. Soto wanted to abort the voyage.

4. Mr. Soto's complaints and "wanting to abort" the voyage was heard by material witnesses Romero-Romero, Rangel-Ventura, Macias-Luna, Garcia-Flores and Sanchez-Sanchez. They were seated closest to Mr. Soto.

5. Mr. Soto asked Mr. Romero to call the person in charge to abort the endeavor.

6. The first call to abort was made shortly after leaving Ensenada after Mr. Soto had returned the panga due to engine failure.

7. Material witnesses Romero-Romero, Sanchez-Sanchez, Rangel-Ventura and De La Rosa heard Mr. Romero call the "boss" and tell Mr. Soto once the call had been completed that they could not return to Ensenada.

8. Material witnesses agreed that each heard different parts of conversations and events.

9. In the morning, material witnesses were taken to an island that had a cave like cavity. They were told to wait there while the engine was being repaired.

DEFENDANT'S SENTENCING MEMORANDUM 4

10. When Mr. Soto left with the panga, someone other than Soto and Romero brought food for all of material witnesses. Every material witness agreed this to be true.

11. In the evening, Mr. Soto returned to pick the group and start again. Shortly thereafter, the engine failed again, and Mr. Soto returned the panga to the island to leave some of the group behind so that the panga would lighten.

12. When no-one volunteered to debark the panga, material witness Macias-Luna and Garcia-Flores remembered Mr. Romero instruct "El Chango"'s people to leave the panga and stay on the island. Four

13. Shortly after the second departure from the island, Mr. Soto asked Mr. Romero to call to abort the voyage. Everyone including Mr. Soto agreed that they should return to land. Material witness De LaRosa heard Mr. Romero tell the group that since they had called twice already, Mr. Romero and Mr. Soto would be in trouble if they called again to abort.

14. Material witnesses Romero-Romero, Garcia-Flores, Sanchez-Sanchez, Hernandez-Aparicio, and Prudencio Guerrero agreed that the destination was San Clemente and not La Jolla.

15. Mr. Soto aborted the trip and landed the panga in La Jolla because the panga had run out of fuel and the ocean was too turbulent to proceed.

16. While Mr. Soto was occupied with trying to keep the panga from flipping over a big wave that hit the panga, Mr. Romero told everyone to remove their jackets and to jump as the water was shallow.

17. Mario-Prudencio-Guerrero and Jose Maria de la Rosa who had not jumped saw a body afloat in the water. Mr. Soto put the panga in reverse and piloted the panga to look for the body. Agents' reports corroborate this fact that the boat reversed and changed location.

18. Everyone on board helped pull the body into the boat and Mr. Romero started his resuscitation only to find out that it was futile as the person had drowned.

19. All material witnesses agreed that they were aware of the risks involved in traveling by ponga, but they assumed the risk anyway as they believed it would be the most "certain" to reach the United States.

### C. NEED FOR SENTENCE TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR LAWS, PROVIDE JUST PUNISHMENT AND DETERRENCE, PROTECT PUBLIC FROM FURTHER CRIMES, PROVIDE DEFENDANT WITH EDUCATION, TRAINING, TREATMENT [3553 (A)(2)]

Defense joins the Government's recommendation that a 60 months sentence would be the appropriate sentence given the circumstances as cited in all parties' "Offense Conduct". Mr. Soto is remorseful and has written a letter to the family of the deceased apologizing to them, and accepting responsibility for his death (*See Exhibit 2: Letter from Mr. Soto.)*

## V.
## CONCLUSION

Mr. Soto-Aguilar urges the Court to adopt the joint recommendation of the parties. A sixty months' sentence is a just sentence that will not only punish and deter Mr. Soto from future criminal activity, set an example for others to deter them from committing a similar offense but will be uniform in its severity as to all the defendants similarly situated.

Respectfully submitted,

DATE: December 7, 2021

s/ *Roseline D. Feral*
ROSELINE D. FERAL
Attorney for Defendant
VICTOR SOTO-AGUILAR (1)